HIRAM L. WASHBURN, Jr., as Receiver of the Property of PETER KALTEUX and JOHN LA GRANGE, Respondent, *v.* ANDREW DETTINGER, Appellant.

*Building contract — notice by the owner of an intention to complete the building on the contractor's default — subsequent fall of the building — the contractor's right to payment for work done — defective work.*

The service of notice upon the contractor by the owner of a building, in accordance with a provision therefor in a building contract, that if the contractor does not complete the building the owner will do so himself, does not terminate the contract, and, consequently, does not release the contractor from liability for defective work done by him, or throw the responsibility therefor upon the owner.

When, in an action brought to recover from the owner an alleged balance due the contractor on a building contract, it appears that, in accordance with a provision in the contract, the owner, on the contractor's stopping work before completion, had served notice upon him that if he did not complete the building the owner would complete it himself; that the contractor did not resume the work, and that a few days after the expiration of the notice the building fell, a recovery cannot be had for the contract price less what it would have cost to complete the building in a good and workmanlike manner, according to the terms of the contract, where the evidence shows that a portion of the work done by the contractor was defective.

Such a recovery cannot be upheld on the theory that the owner, by the service of such notice, and the omission of the contractor to comply therewith, became responsible for the building, and that it was his business to complete it in a good and workmanlike manner, and that if he did not do so before the building fell, the loss was his.

To entitle the contractor to recover for the work done by him, it is necessary for him to establish that such work was done in a workmanlike manner.

So *held*, where it appeared that the expense of doing what was left undone by the contractor, and of doing properly what was defectively done, was unimportant compared with the loss occasioned by reason of the work not having been properly done in the first instance, and that the work was not done, or was defectively done, and the defect was not such as could have been readily discovered by the owner, and that the lapse of time between giving notice that he would complete the building himself and the fall of the building, was not sufficient to justify the owner's being held responsible for not having discovered the defects, and remedied them in time to prevent any evil results.

APPEAL by the defendant, Andrew Dettinger, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Albany county on the 31st day of March, 1893, upon the report of a referee.

The action was brought to recover an alleged balance claimed to be due the firm of Kalteux & La Grange, contractors, on a contract for building an icehouse for the defendant.

The contract contained the following provision : " Should the contractor, at any time during the progress of said works, refuse or neglect to supply a sufficiency of materials or workmen, the owner shall have the power to provide materials and workmen, after three days' notice in writing being given, to finish the said works, and the expense shall be deducted from the amount of the contract."

*W. Frothingham* and *C. J. Buchanan*, for the appellant.

*L. Hotaling* and *E. Countryman*, for the respondent.

HERRICK, J. :

The plaintiff, as receiver of the property and effects of Kalteux & La Grange, brings this action against the defendant upon a contract made by the said Kalteux & La Grange in November, 1875, for the construction and erection by them of an icehouse for the defendant. The contract price thereof was $6,000. Kalteux & LaGrange proceeded to erect said icehouse and received $4,000 thereon.

On or about the 21st of February, 1876, it was mutually agreed, by parol, that further work upon said icehouse should be suspended until the opening of navigation on the Hudson river in the spring.

The referee to whom the case was referred finds that at the time of such suspension of work, there remained of work and material to be done and furnished, the following : " About twenty-three cords sawdust; materials for constructing six French windows ; materials for the inside doors; *materials to replace tie beam ; materials for repinning ;* and the necessary labor of filling in sawdust; completing French windows; making inside doors; *scarfing and pinning tie beams ; repinning building ;* hanging and trimming outside doors."

That prior to the suspension of such work the defendant had partially filled said icehouse with ice, and subsequently placed more therein, and that at the time of the falling of the house, as hereinafter stated, it was more than half filled with ice. Sometime in the early part of April the defendant served notice upon Kalteux

& La Grange that they must complete said icehouse, or in default thereof, that after the expiration of three days from the time of said service, he, the defendant, would complete said icehouse, and deduct the amount of the expense of so doing from the amount unpaid of the contract price for the erection thereof.

That a few days afterwards, the referee finds more than three, how many does not appear, but on the sixteenth day of April said icehouse fell. The referee has found that it would have cost $300 to do the work and furnish the materials left undone and unfurnished, as hereinbefore specified.

He reported in favor of the plaintiff in the sum of $1,700, with interest thereon, amounting in all to $3,481.87, for which amount judgment was entered against the defendant.

The defendant appeals from the judgment and brings up for review many exceptions to the findings and refusals to find of the referee, both upon questions of fact and law.

After a careful review of the evidence in this case I cannot resist coming to the conclusion that the building was improperly constructed and that it fell in consequence of defective construction, although the referee has found " that it does not appear what caused the icehouse to fall."

I think the learned referee erred in refusing to find, as requested by the defendant, " that said building was not constructed in a good and workmanlike manner, and was not, at the time of the commencement of this action, substantially completed."

It appears in the evidence that the building was not properly pinned together.

That the wooden pins used were not of the kind of wood proper to be used for such purposes, being brittle and easily broken ; that in a number of instances where such pins were attempted to be driven in they broke off, and other pins were not put in their places ; that one of the tie beams was not properly fastened, so that for some days before the building fell it became drawn apart from its fastening, and there were other minor defects, as the result of which the building was not solid but vibrated in the wind.

The only architect, a man of high standing in his profession, called as a witness testified that the workmanship was bad. The effect of this is sought to be avoided, however, upon the ground that the

defendant, having served notice upon the contractors that if they did not complete said building that he, the defendant, would at the expiration of three days go on and complete it himself, and the contractors not complying with said notice, that the defendant thereafter became responsible for the building, and that it was his business to complete it and in a good and workmanlike manner, and that if he did not do so before the building fell the loss was his, and the only relief that he is entitled to is to deduct the amount of money which it would have been necessary to expend to complete the building in a good and workmanlike manner, according to the terms of the contract, from the contract price.

There is evidence tending to show that after the service of the notice one of the contractors informed the defendant that he would go on with the completion of the building as soon as he could obtain the sawdust, and subsequently notified him that he could not procure it, but that if he, the defendant, could get it elsewhere that he could send a force of men to put it in. If this story is true, and the preponderance of evidence seems to be that it is, although the referee has found to the contrary, then the contractors still remained in charge of finishing the construction of the building, and the defendant did not assume the responsibility of it. Furthermore, not only had the contractors omitted the doing of some things which were necessary to be done to complete their contract, but it appears, as already stated, that some of the work which they had done was defectively done, so that if it is to be assumed that the defendant in serving notice that he would go on and complete the building himself, thereby assuming the responsibility of doing the work which under the contract remained to be done to complete it, he did not assume the responsibility for bad or defective work performed by the contractors prior to the time they ceased work upon the building.

Serving notice upon the contractor by the owner in accordance with the provisions therefor in the contract, and even proceeding pursuant to such notice to go on and do the work, does not terminate the contract. (*Murphy* v. *Buckman,* 66 N. Y. 296; *Taylor* v. *The Mayor, etc.,* 83 id. 625; *Crouch* v. *Gutmann,* 134 id. 45.)

The contract being still in existence, and the contractors not being released from its terms and conditions, they are responsible for any defective work done in performing it; to hold to the contrary would

be to sustain the proposition that, where there is a provision in the contract providing that in case of delay to complete, the owner may go on and do so, the contractor by abandoning his contract and thus compelling the owner to complete it, may escape liability for defective work done by him and throw it upon the owner; I do not think that this proposition can be successfully maintained.

Neither in a case like this can the owner be made whole by deducting from the contract price the amount of money that it would have cost to have made a perfect job; the expense of properly securing tie beams, of putting in good pins, of taking out defective ones and replacing them by perfect ones, is trivial compared with the injury resulting from the work having been neglected or improperly done.

The expense of doing that which was left undone, and of doing over again properly that which was defectively done, is unimportant compared with the loss occasioned by such work not having been done or properly done in the first instance.

Neither does it appear in this case that the work which was not done, or which was defectively done, was such as could have readily been discovered by the owner; and the lapse of time between the giving of the notice that he would complete the work himself, and the falling of the building, does not appear of sufficient length to hold the owner responsible for not having discovered these defects in the building, and to have remedied them in time to prevent any evil results.

To enable the contractors, or the plaintiff, standing in their place, to recover for the work which was done by them, it was necessary for them to establish that such work as was done by them was done in a good and workmanlike manner, and that I think the evidence shows there has been a failure to establish, and for the error of the referee in refusing so to find the judgment should be reversed, the referee discharged, and a new trial granted, with costs to abide the event.

MAYHAM, P. J., and PUTNAM, J., concurred.

Judgment reversed, referee discharged, and a new trial granted, costs to abide the event.